FRANCIS D. MURPHY, PROSECUTOR, v. TOWN OF WEST NEW YORK IN THE COUNTY OF HUDSON, CHARLES SWENSEN, TOWN CLERK OF THE TOWN OF WEST NEW YORK, RESPONDENTS.

Argued January 19, 1944—Decided September 14, 1944.

112

Before Justices PARKER, HEHER and PERSKIE.

For the prosecutor, *Anthony J. Armore.*

*John A. Hartpence, amicus curiæ.*

The opinion of the court was delivered by

PERSKIE, J. This is a railroad tax case under *R. S.* 54:20-1 (property not used for railroad or canal purposes taxed locally). The basic question for decision is the validity *vel non* of·the resolution unanimously adopted by the Board of Commissioners of the Town of West New York, hereafter referred to as Town, on December 2d, 1942. By the terms of this resolution, briefly stated, the Town agreed, accepted and retained the sum of $75,000 in cash offered by the trustee of the New York, Ontario and Western Railway Company, hereafter referred to as Company, in full satisfaction of the past due taxes of $103,261.52 and interest of approximately $18,000 on the taxable property of the Company, located in the Town, for the years 1937 to 1942, inclusive. *R. S.* 54:4-99. Additionally, the Town, by this resolution, abated the past due taxes and interest in excess of the $75,000 (*R. S.* 54:4-100), and directed its tax collector, upon receipt of the $75,000, to cancel the unpaid taxes and interest and mark his records accordingly.

The validity of the resolution, challenged by a citizen and taxpayer of the Town, is not here defended either by argument or brief for the Town. It is defended for the Company by its counsel, as *"amicus curiæ."*

The Company is a corporation of New York. Since May 20th, 1934, it has been operating, as a going concern, by Frederick E. Lyford, as trustee, who was appointed by the District Court of the United States for the Southern District of New York wherein proceedings are pending for its reorganization in accordance with section 77 of chapter VIII of the Acts of Congress relating to bankruptcy. For the effect of such a proceeding, see *Lowden* v. *Northwestern National Bank and Trust Co.*, 298 *U. S.* 160, 163; 80 *L. Ed.* 1114, 1116.

The Company owns a coal terminal located in the Town at the foot of Sixty-seventh Street, extended. It covers about 12 acres of which 9.6 acres embraces the land in question and which is designated by the taxing authority of the Town as Block 179, Plat G, Lots A, C and D. Six of the 9.6 acres are water front land on the Hudson River. The land has full riparian rights. The improvements consist of eight buildings all of which are used for fuel delivery, of which two are high coal trestles. These trestles have a height of 31 and 32 feet over the dock of the pier; they are about 600 feet long and cover the entire two piers and extend some 400 feet over the land under water and beyond the bulkhead into the river.

The tax history of the assessments, after appeals, on said lands and improvements is as follows:

| Year | Land | Improvements | Total |
|------|------|--------------|-------|
| 1936 | $340,000 | $138,000 | $478,000 |
| 1937 | 262,250 | 103,000 | 365,250 |
| 1938 | 262,250 | 103,000 | 365,250 |
| 1939 | 220,250 | 85,000 | 305,250 |
| 1940 | 220,250 | 85,000 | 305,250 |
| 1941 | 182,250 | 75,000 | 257,250 |
| 1942 | 262,250 | 103,000 | 265,250 |
| 1943 | 210,000 | 85,000 | 295,000 |

The valuations which the Company placed upon its land and improvements on its appeals from the local assessments are as follows:

| Year | Land | Improvements | Total |
|---|---|---|---|
| 1937 . . . . . . . . . . . . | $225,000 | $70,000 | $295,000 |
| 1938 . . . . . . . . . . . . . | 190,250 | 75,000 | 265,250 |
| 1939 . . . . . . . . . . . . | 160,000 | 60,000 | 220,000 |
| 1940 . . . . . . . . . . . . | 180,000 | 60,000 | 240,000 |
| 1941 . . . . . . . . . . . | 160,000 | 65,000 | 225,000 |
| 1942 . . . . . . . . . . . . | 210,000 | 85,000 | 295,000 |

With these facts in mind, we turn to the settled applicable law. Unless the standard fixed by *R. S.* 54:4–100 has been observed, the abatement of the tax debt (principal and interest) of the Company to the Town is a gift of municipal funds in clear contravention of article I, paragraph 20 of our State Constitution. *Wilentz* v. *Hendrickson,* 133 *N. J. Eq.* 447; 33 *Atl. Rep.* (*2d*) 366; *affirmed,* 135 *N. J. Eq.* 244; 38 *Atl. Rep.* (*2d*) 199. The statute, so far as is pertinent, provides as follows:

"No abatement of the principal sum of any such taxes, assessments or other municipal charges shall be made unless the governing body shall be satisfied that the *market value* of the property in question upon or against which such taxes, assessments or other charges have been levied, is less than such principal sum * * *."

It is immediately obvious that the legislation in question prohibits an abatement of taxes where the "market value" of the property taxed exceeds the amount due the municipality. We are entirely satisfied that the proofs fail to justify the action taken. For, at the time of the adoption of the resolution in question, the Company and the Town agreed in writing that the very property in question should be assessed for the following year for the total sum of $295,000 (upon which basis we are told the taxes has since been paid), an amount considerably in excess of twice the taxes due and almost four times as much as the compromise figure of $75,000. The figure of $295,000 must have represented the "true value" of the property as of that time. New Jersey Constitution, article IV, section 7, paragraph 12. And "true value" has been held to mean "the price * * * in money * * * at a fair sale * * * between a willing seller and

a willing buyer; that is one not obliged to sell dealing with one not obliged to buy." *New Jersey Bell Telephone Co.* v. *Newark,* 118 *N. J. L.* 490, 494; 193 *Atl. Rep.* 844; *affirmed,* 124 *N. J. L.* 451; 12 *Atl. Rep.* (*2d*) 675. It is difficult, if not impossible, to understand how "true value" thus defined differs from "market value." They are used interchangeably when a hypothetical sale is involved. And we have held that "* * * The true criterion for assessment ('true value') is market value." *Charles Warner Co.* v. *State Board of Taxes, &c.,* 1 *N. J. Mis. R.* 26, 27. But it is not necessary, under the facts of the case at hand, to determine whether there is in fact a distinction between these two concepts. For, the proof in support of the resolution is admittedly predicated upon the value of the property divorced from the actual condition in which the Company held and used it. Such proof is based upon a wrong premise and is of no avail since here, as in the case of assessments, property, whatever may be its character, must be taken and valued in the actual condition in which it is held, owned and used. *Colwell* v. *Abbott,* 42 *N. J. L.* 111, 115; *Trustees, &c., Stevens Institute* v. *State Board, &c.,* 105 *N. J. L.* 99, 101; 143 *Atl. Rep.* 356; *affirmed,* 105 *N. J. L.* 655; 146 *Atl. Rep.* 919. Whatever the market value of the property may be, in the event of its acquisition by the Town in the future, is altogether beside the point. We do not determine an issue upon speculative or non-existent facts.

It is utterly incredible that the property of the Company, without any suggested change affecting its value, may be valued for the purpose of satisfying past due taxes thereon at $75,000 and at the same time be valued for the purpose of collecting future taxes thereon at $295,000. Such valuation ($75,000) lacks persuasion. The proofs clearly and persuasively establish that the statutory standard (*R. S.* 54:4–100) was not satisfied.

We have examined all other points argued and find them to be without merit.

The resolution is set aside, with costs.